```
      IN THE UNITED STATES DISTRICT COURT FOR THE
              EASTERN DISTRICT OF OKLAHOMA
```

BILL DAVE BRANNON,            )
                              )
            Plaintiff,        )
                              )
v.                            )   Case No. CIV-12-304-KEW
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social        )
Security Administration,      )
                              )
            Defendant.        )

## OPINION AND ORDER

Plaintiff Bill Dave Brannon (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 19, 1964 and was 46 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant worked in the past as a quality control tester for a siding mill, an irrigation installer at a vineyard and as a bakery assistant. Claimant alleges an inability to work beginning June 14, 2004 due to limitations resulting from an annular tear at L5-S1 with left side radiculopathy, severe knee pain post

3

arthroscopic surgery, severe diffuse sensorimotor polyneuropathy of both lower extremities, reflex sympathetic dystophy, chronic left hip pain, mild scoliosis, headaches, diabetes, obesity, asthma, and depression.

**Procedural History**

On January 28, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On January 26, 2009, the ALJ issued an unfavorable decision. On July 29, 2010, the Appeals Council remanded the case for further consideration of Claimant's impairments.

On January 18, 2011, an administrative hearing was held before ALJ Michael Kirkpatrick in Poteau, Oklahoma. On February 18, 2011, the ALJ issued a second unfavorable decision. On May 24, 2012, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe

impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a wide range of sedentary work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to include all of his impairments at step two; (2) failing to perform a proper credibility analysis; (3) reaching an improper RFC determination; (4) failing to remand based upon Claimant's GAF scores; and (5) making an improper step five determination that Claimant could perform certain jobs in the economy.

### Step Two Determination of Impairments

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine; degenerative joint disease of the left hip; status post left knee arthroscopy; diabetes mellitus, and obesity. (Tr. 14). The ALJ determined Claimant retained the RFC to perform a wide range of sedentary work, finding he retained the capacity to lift/carry 10 pounds occasionally and 5 pounds frequently, could stand/walk for 2 hours in an 8 hour workday, could sit for 6 hours in an 8 hour workday, but could climb, balance, stoop, kneel, crouch, and crawl only occasionally. (Tr. 18). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs

of clerical (such as a food and beverage clerk), inspector (such as a touch up screener), and assembler (such as a lens inserter), which he found existed in sufficient number nationally and regionally. (Tr. 26). He, therefore, concluded Claimant was not disabled. Id.

Claimant first contends the ALJ failed to identify all of his severe impairments at step two. At step two, Claimant bears the burden of making a threshold showing the existence of a medically determinable impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988). The step two determination is based on medical factors alone. Id. at 750. The claimant must make a "de minimis showing of medical severity" or the evaluation process ends, and benefits are denied. Id. at 751. An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period

7

of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Claimant first asserts that ALJ should have included his reflex sympathetic dystrophy ("RSD") as a severe impairment. On May 5, 2005, Dr. Robert Bebout stated in connection with Claimant's worker's compensation claim that an MRI of the lumbar spine was needed to rule out radiculopathy. If the MRI turned out to be negative, then Claimant was to be sent to a physician for lumbar sympathetic injections for RSD. (Tr. 352). This statement does not diagnose Claimant with RSD as Claimant urges. Later records from Dr. Bebout also do not reflect such a diagnosis. (Tr. 327). Indeed, Claimant in his briefing appears to seek to have this Court make the diagnosis of this condition based upon his symptomatology, which would be improper. The failure to include this condition as a severe impairment was not error.

Claimant next contends his headaches should have been considered a severe impairment. The ALJ noted Claimant's testimony that he experienced frequent, severe, and debilitating headaches but also recognized little medical evidence to support his allegations. (Tr. 15). As the ALJ explained, Claimant takes only over the counter medication for his headaches. (Tr. 44). Moreover, he presented to Dr. William Wood with migraine headaches in October of 2006. (Tr. 400). A CT brain scan was negative. (Tr. 423). Claimant does not reference any other medical evidence showing

complaints or treatment for this condition. Based upon this evidence, this Court cannot find the omission of this condition at step two to be error.

Claimant contends that his depression should also have been included as a severe impairment. On November 25, 2008, Dr. Wood found Claimant suffered from depression and prescribed Cymbalta to treat the condition. Claimant testified that he could not afford the drug and was given a cheaper medication, Wellbutrin, but he could not afford that drug as well. (Tr. 46). He also stated that mentally, he could do anything. (Tr. 45).

Claimant was also evaluated by Dr. Denise LaGrand on September 1, 2010. Dr. LaGrand found Claimant suffered from pain disorder, due to his general medical condition; major depressive disorder, moderate; generalized anxiety disorder; and polysubstance abuse/dependence, in full sustained remission. She concluded that, from a psychological standpoint, Claimant's ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers was estimated to be low average. (Tr. 518). Based upon Dr. LaGrand's findings, Claimant's testimony, Dr. Wood's treatment, and the lack of other psychological treatment, this Court cannot conclude Claimant's depression sufficiently impairs his ability to engage in basic work activities to constitute a severe impairment. Accordingly, the ALJ's findings in this regard are not erroneous.

The final condition Claimant asserts should be considered as a severe impairment is his polyneuropathy. On February 7, 2006, Claimant underwent an EMG study which indicated he had a moderately severe diffuse sensorimotor polyneuropathy affecting both lower extremities. Claimant was noted to have some decreased effort during the EMG exam which made for a slightly limited study. (Tr. 345). There was no definite evidence of radiculopathy affected the left lower extremity on the EMG study. (Tr. 346). Claimant argues this condition affects his arms and hands and his ability to grasp. Nothing in the study indicates that the polyneuropathy affects the upper extremities. Moreover, he testified that his toes were tingling (Tr. 40) but nothing in the record, including Claimant's testimony, would indicate that this condition affects his ability to engage in basic work activities. Based upon these findings, this Court does not find error in the ALJ's failure to include these additional conditions as severe impairments.

**Credibility Determination**

The ALJ found Claimant's testimony as to the limiting effects of his conditions were not credible. In doing so, the ALJ entered the boilerplate paragraph in finding Claimant's credibility wanting:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

10

> inconsistent with the above residual functional capacity
> assessment.
>
> (Tr. 19).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

As has previously been recognized in this Court, the statement on credibility contained in the ALJ's decision is vague and unhelpful. More importantly, it is flawed. The ALJ appears to have predetermined Claimant's RFC before even considering Claimant's statements as to the limiting effects his conditions might have upon his ability to engage in work activity.

Further examination of the decision reveals he set forth additional bases for his credibility findings. He reviewed the objective medical evidence and found Claimant's allegations of disability that limit his activities of daily living to be unsupported by objective medical evidence. He also found Claimant's "Function Report" of February 17, 2007 did not support the limitations he now claimed. (Tr. 22). The ALJ fulfilled his duty, separate and apart from the use of the improper boilerplate language, by affirmatively linking his findings on credibility to the objective medical record.

This Court would note that Claimant's objection to certain language used by the ALJ in finding that Claimant told Dr. Wood to forward the bill for his report to Claimant's lawyer is without merit. Dr. Wood's report does, in fact, indicate that Claimant wanted the bill for the physician's report to be sent to his lawyer, whether his lawyer paid for the report or not. (Tr. 452). Nothing

12

in the ALJ's recitation of this statement creates reversible error.

**RFC Determination**

Claimant contends the ALJ's RFC findings were not supported by the medical record. In particular, Claimant challenges the ALJ's rejection of the opinion of Claimant's treating physician, Dr. William Wood. Dr. Wood completed a Physical RFC Assessment on Claimant dated November 24, 2008. He indicated Claimant had seen him since January of 2007 for back related problems. He diagnosed Claimant with "low back pain - bulging disks" with a guarded prognosis. Dr. Wood found Claimant's pain would constantly interfere with his attention and concentration and that he was incapable of even "low stress" jobs. (Tr. 442-43).

Dr. Wood estimated that Claimant could sit for 20 minutes at one time and stand for 10 minutes at one time. (Tr. 443). He also found Claimant could sit and stand/walk for less than 2 hours in an 8 hour workday and would require periods of walking around during the workday every 10 minutes for about 10 minutes. Dr. Wood opined Claimant would need a job that permits shifting positions at will from sitting, standing, or walking. He would also need to take unscheduled breaks during an 8 hour workday. Claimant would also require the use of a cane. (Tr. 444).

Dr. Wood found Claimant could rarely lift/carry less than 10

13

pounds. (Tr. 444). He estimated Claimant could never twist, stoop, crouch/squat, climb ladders, or climb stairs. He found Claimant had significant limitations in reaching. He could use his hands to grasp, turn, or twist objects about 20% of an 8 hour workday, use his fingers to engage in fine manipulation about 80% of an 8 hour workday, and use his arms to reach about 10% of an 8 hour workday. He commented that Claimant would only experience bad days and not any good days. (Tr. 445). In his narrative comment, Dr. Wood stated Claimant was in "constant pain requiring narcotics which render him weak, groggy (sic) incapable of work." (Tr. 446).

The ALJ concluded Dr. Wood's opinion was entitled to "little weight" because it was found to be inconsistent with Claimant's reported activities of daily living and was unsupported by Dr. Wood's treatment records. (Tr. 24). His basis for doing so consisted of findings that (1) Dr. Wood is not a specialist but only a family medicine physician; (2) Dr. Wood saw Claimant every three months and treated him by providing a routine prescription of one pain medication (Lorcet) for his orthopedic pain; (3) Dr. Wood never referred Claimant for more extensive treatment, for pain management, mental health treatment or orthopedics; (4) no indication of grogginess or weakness from medication in Dr. Wood's treatment records as he later found in his medical source statement; and (5)

14

the fact the "paperwork" was paid for by Claimant's attorney. (Tr. 24).

Dr. Wojciech L. Dulowski provided a consultative examination of Claimant on April 2, 2007. He noted Claimant complained of extreme pain in his lower lumbar spine radiating to the left lower extremities. He also noted numbness of the left lower extremities blow his knee. He used a cane in his right hand, stating he had difficulty with his left knee joint. (Tr. 425). Dr. Dulowski diagnosed Claimant with chronic back pain secondary due to an annular tear of L5-S1 with left side radiculopathy. He noted a slight atrophy of the left calf. Range of motion of the left knee was full but painful on the extreme. He also found Claimant to have diabetes mellitus and chronic asthma, noting he was still a smoker. (Tr. 426). Claimant's range of motion in his back was reduced with positive straight leg raising on the left. (Tr. 430). Dr. Dulowski also stated Claimant's gait was normal without the use of a cane. (Tr. 431).

Claimant also was attended by Dr. Michael Wolfe in May of 2006. Dr. Wolfe found Claimant would have problems with jobs that involve repetitive bending, stooping, or lifting and any job involving lifting more than 25 pounds. (Tr. 341).

In connection with his worker's compensation case, Claimant saw

15

Dr. Robert Bebout. Dr. Bebout concluded Claimant had normal stability, did not find any particular objective findings wrong with his knee and gave no permanent impairment rating. (Tr. 327).

The ALJ observed Claimant was not groggy during the hearing. He also noted Claimant testified the entire hearing without any apparent discomfort. (Tr. 24).

Claimant's statements of daily activities included paying bills, cooking, riding a mower, doing dishes and laundry, taking care of pets, picking up kids from school, and helping them with their homework. (Tr. 244-54).

This Court must conclude that Dr. Wood's statements of extreme limitation are not supported by either his own treatment records or those of the other physicians who have either examined Claimant or reviewed his medical records. Therefore, the ALJ's rejection of Dr. Wood's restrictive report on Claimant's functional limitations was not erroneous.

### GAF Scores

Claimant contends the ALJ should have considered his GAF score of 50 in his assessment. Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's

judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). This Court finds no error in the ALJ's failure to utilize the GAF scores in reaching a decision.

**Step Five Analysis**

Claimant contends the ALJ did not include all of Dr. Wood's limitations in his hypothetical questioning of the vocational expert. Since this Court found no error in giving the opinion little weight, it was not error for the ALJ to not include all of Dr. Wood's restrictions in his questioning. The ALJ's step five analysis was not flawed.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security

Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 23rd day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE